24-2922-cv
*Bilodeau v. Usinage Berthold, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of June, two thousand twenty-five.

PRESENT:     DENNY CHIN,
             SARAH A. L. MERRIAM,
             MARIA ARAÚJO KAHN,
                 *Circuit Judges*.

_____

TRICIA BILODEAU, Individually, and as
Administrator of the Estate of Matthew
Bilodeau,

    *Plaintiff-Appellee*,

        v.                                                    24-2922-cv

USINAGE BERTHOLD, INC.; BERT
TRANSMISSION, a Division of Usinage
Berthold, Inc.,

    *Defendants-Appellants*.

_____

FOR PLAINTIFF-APPELLEE: JAMES MCNAMARA (Amelia W. Silver, *on the brief*), Harding Mazzotti, LLP, Manchester Center, VT.

FOR DEFENDANTS-APPELLANTS: MARK SALAH MORGAN, Day Pitney LLP, Parsippany, NJ.

Appeal from a judgment of the United States District Court for the District of Vermont (Crawford, *J.*).

**UPON DUE CONSIDERATION,** the August 9, 2024, judgment of the District Court is **AFFIRMED.**

Plaintiff-appellee Tricia Bilodeau brought this action, invoking diversity jurisdiction, against defendants-appellants Usinage Berthold, Inc. and Bert Transmission (collectively "Usinage"). Bilodeau asserts wrongful death and related state law claims arising out of the death of her husband Matthew, who was killed when an air jack made by Usinage collapsed and the racecar supported by the jack crushed him. After Usinage repeatedly failed to comply with court orders, the District Court sanctioned Usinage pursuant to Rule 37 of the Federal Rules of Civil Procedure by entering a final default judgment in the amount of $12,082,743. *See Bilodeau v. Usinage Berthold, Inc.*, 5:22CV00101(GWC), 2024 WL 3744150 (D. Vt. Aug. 9, 2024). Usinage filed a three-page motion to vacate the judgment, citing no rules and no law, which the District Court denied. Usinage appeals the District Court's denial of its motion to vacate, as well as the underlying default judgment order. We assume the parties' familiarity with the underlying facts and issues, to which we refer only as necessary to explain our decision to

2

affirm.

## I.      Procedural History

The Complaint in this matter was filed on May 9, 2022.  A scheduling order was entered on July 27, 2022, based on the parties' stipulation, setting deadlines including the service of initial disclosures by August 11, 2022, and the completion of all discovery by April 11, 2023.  *See* App'x at 23-25.  Bilodeau served her initial disclosures as required; Usinage did not.  On March 31, 2023, the parties sought and received an extension of the deadlines in the scheduling order to require the service of initial disclosures by March 30, 2023, and the completion of all discovery by August 1, 2023.  *See id.* at 26-28.

On September 19, 2023, Bilodeau filed a motion to compel and for sanctions.  The motion represented that Usinage had never served initial disclosures and had failed to cooperate with counsel for Bilodeau regarding discovery and scheduling matters.  It further represented that counsel for Usinage had indicated that he did not know why Usinage had not provided initial disclosures, and that he believed Usinage might have new counsel.  *See id.* at 19-21.

Usinage did not respond to the motion to compel.  Accordingly, on October 25, 2023, Bilodeau filed a motion for a hearing, and a hearing was conducted on December 13, 2023.  Counsel for Usinage asserted "my client is cooperative" and represented that he would provide the initial disclosures and other discovery materials requested within ten days.  App'x at 180.  The District Court granted the motion to compel, ordering Usinage to provide initial disclosures and interrogatory responses by December 23, 2023.  The Court deferred ruling on the request for sanctions, noting that the threat of sanctions

3

should "be a strong motivator for the defendant to, to get responses in." *Id.* at 181.

Shortly after that hearing, the District Court entered an order stating: "A review of the court's records indicates that [Usinage counsel of record] attorney McGuire is not admitted to practice in the District of Vermont. Nor has he obtained local counsel and filed a pro hac vice motion. The court orders that within fifteen (15) days, attorney McGuire take the necessary steps for admission or file a motion to be admitted pro hac vice." *Id.* at 3.

On December 28, 2023, Bilodeau filed a supplemental memorandum in support of her motion for sanctions, representing that Usinage "did not produce any documents or respond to the Motion to Compel or this Court's Order compelling production within the ten days allotted." *Id.* at 40-41. In response, the District Court issued an order on February 6, 2024, scheduling a hearing on the motion for March 6, 2024, and directing: "**A representative from Usinage Berthold, Inc. and Bert Transmission is required to attend this hearing.**" *Id.* at 44 (emphasis in original). At the hearing, Bert Robidoux appeared on behalf of Usinage. The District Court questioned Attorney McGuire regarding his failures to comply with the court's orders, and stated:

> I asked Mr. Robidoux to come because I have real concerns that Mr. McGuire is going to have difficulty representing you because the conventional things that we discuss are, are, don't seem to be at his finger tips in federal court, and we're not terribly far away from some kind of default sanction. I'm not going to impose it today. I'm going to give you another chance, but I'm not going to give you a third chance.

*Id.* at 224. McGuire represented that he and his client would meet after the hearing concluded and "get everything up-to-date today." *Id.* at 229-30. The Court then

4

specifically inquired of Mr. Robidoux to ensure that he understood the proceedings, and Mr. Robidoux indicated that he did. *See id.* at 232.

The District Court advised all counsel that if Usinage did not comply with the new discovery deadlines, sanctions "could certainly include a default on the liability issue." *Id.* The District Court told Usinage's counsel "it's really quite urgent," and counsel indicated that he understood. *Id.* at 233. Finally, the District Court ordered Usinage to have local counsel appear in the case by March 13, 2024. Again, when asked by Bilodeau's counsel what would happen if Usinage did not comply with the Court's orders, the District Court stated: "I'll issue an order to show cause why a default judgment shouldn't enter." *Id.* at 235.

Counsel admitted in the District of Vermont did not appear for Usinage. Accordingly, on April 17, 2024, the District Court issued an Order to Show Cause why sanctions should not be imposed, scheduling a hearing for May 29, 2024. That order stated: "The potential sanction for a failure to comply with the court's order includes a default judgment against the defendant." *Id.* at 47. The show-cause hearing was continued twice, and it was eventually conducted on July 17, 2024. Prior to the hearing, Bilodeau submitted affidavits and other materials, including an expert report regarding liability and an expert report regarding damages, in support of her claim for damages in the amount of $76,482,753. *See id.* at 56. Bilodeau also filed a motion expressly seeking the entry of a default judgment.

At the show-cause hearing, Attorney McGuire inexplicably asserted that his appearance was "only a first appearance," and he "would be making a pro hac vice

admission request." *Id.* at 188. He further claimed to believe the case had been abandoned, that he had no recollection of appearing for the March 6, 2024, conference (with his client), and that counsel for Bilodeau should have given him "the courtesy of a phone call" to alert him that discovery was missing. *Id.* at 193. McGuire suggested that he was still deciding whether to "take the case or not take it" and asked the Court to give him "a week from Friday" to get everything done. *Id.* at 198.

The District Court denied any additional extensions, entered default judgment on the question of liability, and conducted a hearing in damages. Bilodeau testified regarding her claimed damages and Usinage's counsel was permitted to cross-examine her. The District Court ordered the parties to submit any supplemental materials regarding damages by July 24, 2024; the docket does not reflect that any such materials were filed by Usinage. On August 9, 2024, the District Court issued a judgment of default in the amount of $12,082,743.

## II.    Standard of Review

"[W]e review the imposition of Rule 37 sanctions for abuse of discretion." *Kyros Law P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 545 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822 (2024) (citation omitted). This includes the "entry of a default judgment" as a sanction for violation of court orders. *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013). Likewise, "[a] motion to vacate a default judgment . . . is addressed to the sound discretion of the district court and we will not reverse the denial of such a motion except for abuse of discretion." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004) (citation and quotation

6

marks omitted). "An abuse of discretion occurs when a district court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *Kyros Law*, 78 F.4th at 543 (citation and quotation marks omitted).

## III.    Entry of Default Judgment

A district court "has wide discretion to impose sanctions for abusing" the discovery process. *Id.* at 545. Rule 37 gives a district court the authority to impose "just" sanctions on a party who fails to comply with a discovery order, including "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). While "entering judgment against a defendant" is a "severe sanction[]," it "may be appropriate in extreme situations, [such] as when a court finds willfulness, bad faith, or any fault on the part of the noncompliant party." *Guggenheim Cap.*, 722 F.3d at 450-51 (citation and quotation marks omitted).

"Several factors may be useful in evaluating a district court's exercise of discretion . . . under Rule 37. These include: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (per curiam) (citation and quotation marks omitted and alteration adopted).[1] All four of these factors support the District Court's decision to enter default

---

[1] Additionally, "entries of default judgments" generally, whether or not based on Rule 37, "require sufficient notice" to the party against whom judgment is to be entered. *Guggenheim*

7

judgment against Usinage.

First, the District Court did not abuse its discretion in finding that Usinage's non-compliance with its orders was willful. As set forth in detail above, Usinage repeatedly "failed to comply with any discovery requirements or the court's deadlines despite repeated hearings and orders" and "provided no discovery at all, including initial disclosures." *Bilodeau*, 2024 WL 3744150, at *2. The District Court issued several orders and conducted two hearings regarding the need for compliance, one of which was attended by a corporate representative of Usinage, but its efforts "did not result in any compliance." *Id.* Counsel's conduct was willful. "[W]here the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998). Usinage made no showing that it made any attempt to monitor counsel's handling of the lawsuit. Indeed, even after a corporate representative of Usinage appeared at a hearing at which the District Court emphasized the need for compliance, the non-compliance continued.

Second, the District Court did not abuse its discretion in concluding that lesser sanctions would have been ineffective. Even after "two hearings and two orders from the court," and direct participation by the client, Usinage "failed to respond to discovery,"

---

*Cap.*, 722 F.3d at 452; *see also* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application [for default judgment] at least 7 days before the hearing."). In this case, Usinage had ample notice that a default judgment could be entered and ample opportunity to be heard.

8

"provide[] initial disclosures," "respond[] to interrogatories and requests to produce," or "obtain counsel admitted to practice in the District of Vermont." *Bilodeau*, 2024 WL 3744150, at *3. The District Court therefore appropriately rejected lesser sanctions given Usinage's continued non-compliance after multiple explicit warnings.

*Third*, the duration of the non-compliance – arguably as long as two years – supports the District Court's imposition of sanctions.

*Finally*, the District Court appropriately concluded that Usinage "received fair warning of the potential consequence of default." *Id.* As set forth above, the Court held multiple hearings and provided ample notice both in written orders and orally from the bench of the possibility that a default would enter – including with the client personally present.

In sum, all four factors support the District Court's exercise of discretion in entering a default judgment against Usinage.

## IV. Motion to Vacate Judgment

The District Court also did not abuse its discretion by denying Usinage's motion to vacate the judgment, which it properly construed as having been brought pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure. A court "may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "A party challenging the entry of a default judgment must satisfy the good cause shown standard in Rule 55(c)." *Guggenheim Cap.*, 722 F.3d at 454 (citation and quotation marks omitted). "This standard requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Id.* at 455.

9

Usinage's motion was woefully deficient; indeed, it did not cite any rule authorizing relief or include a memorandum of law. Rather, the motion consists largely of claims by counsel that he did not receive communications from Bilodeau's counsel or from the District Court – claims that are directly contradicted by the record. The District Court construed the perfunctory three-page motion as asserting "excusable neglect," and concluded that there was "no basis for a finding of mistake or excusable neglect" because Usinage and its counsel "failed to comply with basic requirements of participating in a lawsuit over the course of two years" despite receiving "notice and warning of the possibility of a default." App'x at 240.

Usinage contends that the District Court erred by failing to consider any "meritorious defenses" it might have. Appellants' Br. at 35. But Usinage's motion made only a cursory claim that the air jack was not defective and that the instructions Bilodeau alleged were lacking were unnecessary. It did not address Bilodeau's expert report or explain how Usinage could prevail at trial. It simply stated: "The question of the need for instructions is certainly one for a jury to decide." App'x at 160. Such "conclusory assertions" are insufficient meet the defendants' "burden of offering evidence sufficient to establish a complete defense." *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam).

On this record, we find no abuse of discretion in the District Court's denial of Usinage's motion to vacate the default judgment.

10

We find Usinage's remaining arguments meritless.[2]  For the foregoing reasons, the judgment of the District Court is **AFFIRMED.**

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

[2] Notably, Usinage contends that the appropriate sanction for its conduct was to remove McGuire as counsel.  But Usinage was on notice of the need for new counsel to appear and took no steps to address the issue.  Removal of McGuire would simply have resulted in Usinage being unrepresented, which in turn would have led to the same result: a default judgment.  *See Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006) ("[A] corporation may not appear in a lawsuit against it except through an attorney, and . . . where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it." (citation and quotation marks omitted)).

11